DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Cedric J. McAdory, appeals from the judgment of the Summit County Court of Common Pleas, which convicted Mr. McAdory of three counts of rape, one count of kidnapping, and one count of public indecency; and adjudicated Mr. McAdory a violent sexual predator. We affirm.
 I. A. {¶ 2} Mr. McAdory and the victim's mother, Geneva Johnson, had known each other since the end of 1995 or the beginning of 1996. Mr. McAdory is the relative of the father of one of her five children other than the victim. Over the course of this time the victim, who lived with Ms. Johnson, had become acquainted with Mr. McAdory. In the year 2002 when the incident at issue in the instant case occurred, the victim was nine years old.
 {¶ 3} On June 4, 2002, Ms. Johnson hosted a picnic at her home for friends and relatives. After the party, Ms. Johnson, leaving her children at home, transported some of the children who attended the party to their homes. While Ms. Johnson was away, Mr. McAdory appeared at the victim's home and knocked on the door. The victim opened the door and let Mr. McAdory into the house. Mr. McAdory began to play with the children, including the victim. Specifically, he lifted the victim up, "[m]aking her touch the ceiling[.]" While he was lifting the victim, Mr. McAdory put his hand into her pants and inserted two fingers into her vagina. After he placed her back down on the ground, the victim went upstairs to change her clothing. Mr. McAdory sent two of the victim's siblings out to his car, which was parked in front of the victim's home, to turn the ignition off in his vehicle because he had left it running.
 {¶ 4} Mr. McAdory followed the victim upstairs and opened the door to her bedroom, where she was changing her clothing. He then threw the victim on the bed, pulled off her shorts and underwear, and laid on top of her. Once again, he inserted his fingers into her vagina. Mr. McAdory then unbuttoned his pants, inserted his penis into her vagina, and moved up and down repeatedly. During this incident Mr. McAdory covered the victim's mouth with his hand
 {¶ 5} While the incident was occurring, the victim's sister came upstairs because she thought she had heard the victim call out to her. When she entered the victim's bedroom, the victim's sister saw Mr. McAdory on top of the victim. At this point, Mr. McAdory removed himself from on top of the victim and went downstairs. Before leaving the house, Mr. McAdory asked the victim for a hug, and she refused. Thereafter, Ms. Johnson phoned home, at which point the children informed her of the events that had occurred. Ms. Johnson came home immediately, and called 911 to report the incident.
 {¶ 6} In the early morning hours on June 5, 2002, Mr. McAdory was observed masturbating and fondling himself in the waiting room at the Akron City Hospital. When asked why he was at the hospital by a hospital employee, Mr. McAdory responded that he was looking for his grandmother. After discovering that his grandmother was not a patient at the hospital, hospital security handcuffed Mr. McAdory and detained him. The hospital called the Akron Police Department, and pursuant to this call an officer arrived at the hospital and arrested him. The officer noticed that Mr. McAdory's demeanor and appearance matched a "Be on the lookout" which the police department had issued earlier that evening due to the reported rape incident. The officer contacted the police officers that were handling that rape call, who then arrived at the scene and took Mr. McAdory into custody.
 B. {¶ 7} Mr. McAdory was indicted on the following: (1) three counts of rape, in violation of R.C. 2907.02(A)(1)(b), a felony in the first degree, with three sexually violent predator specifications, in violation of R.C. 2941.148[2971.03]; (2) one count of kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree, with a sexually violent predator specification, in violation of R.C. 2941.148[2971.03], and with a sexual motivation specification, in violation of R.C. 2941.147; and (3) one count of public indecency, in violation of R.C. 2907.09, a third degree misdemeanor.[1] The rape and kidnapping charges arose from events that occurred on June 4, 2002, and the public indecency charge arose from the unrelated event occurring on June 5, 2002 at the Akron City Hospital. Mr. McAdory pled not guilty to all counts.
 {¶ 8} On September 18, 2002, the State filed a notice of intent to use similar act evidence in the State's case-in-chief and a memorandum in support. On September 20, 2002, the trial court granted the motion, permitting the use of this evidence by the State during trial. On January 10, 2003, a jury found Mr. McAdory guilty of three counts of rape, one count of kidnapping, and one count of public indecency. Thereafter, the court also adjudicated Mr. McAdory a violent sexual predator. The trial court sentenced Mr. McAdory accordingly. This appeal followed.
 {¶ 9} Mr. McAdory timely appealed, asserting five assignments of error. We combine the first, second, and third assignments of error to facilitate review.
 II. A. First Assignment of Error
"Appellant Mcadory was denied his right pursuant to the United States and Ohio constitutions to due process of law and a fair trial when the prosecution introduced, over objection, evidence of other acts."
 Second Assignment of Error
"Appellant mcadory was denied due process of law and his right to a fair trial pursuant to the United States and ohio consitutions when the other acts evidence admitted against him at trial was not related in nature, time, and place of the offense charged."
 Third Assignment of Error
"Appellant mcadory was denied his right to due process of law and a fair trial when the prosecutor introduced appellant's convictions of the other acts evidence."
 {¶ 10} In his first and third assignments of error, Mr. McAdory claims that he was denied his right to due process of law and a fair trial when evidence of other acts of sexual conduct and prior convictions were introduced at trial. In his second assignment of error, Mr. McAdory contends that this evidence of prior acts is furthermore inadmissible because these acts are not related in nature, time, and place to the offense that he was actually charged with in the instant case. Mr. McAdory's first, second, and third assignments of error are without merit.
 {¶ 11} A trial court possesses broad discretion with respect to the admission of evidence. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, citing State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not overturn the decision of a trial court regarding the admission or exclusion of evidence absent a clear abuse that has materially prejudiced the defendant. Ditzler, supra; see, also, State v.Ali (Sept. 9, 1998), 9th Dist. No. 18841. An abuse of discretion connotes more than an error of judgment, and instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency[,]" Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, or an arbitrary, unreasonable, or unconscionable decision, Schafer v. Schafer (1996),115 Ohio App.3d 639, 642.
 {¶ 12} Generally, evidence of prior criminal acts completely independent of the crime for which a defendant is being tried, is inadmissible. State v. Wilkins (1999), 135 Ohio App.3d 26, 29, citingState v. Thompson (1981), 66 Ohio St.2d 496, 497. However, an exception to this general rule exists, as provided for in R.C. 2945.59 and Evid.R. 404(B). Ali, supra. Evid. R. 404(B) provides that evidence of such crimes, wrongs or acts may be admissible for purposes other than proving the conformity of an accused with a certain character trait during the incident in question. Specifically, Evid.R. 404(B) provides the following:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such asproof of motive, opportunity, intent, preparation, plan, knowledge,identity, or absence of mistake or accident." (Emphasis added.)
R.C. 2945.59 reads:
"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous withor prior or subsequent thereto, notwithstanding that such proof may showor tend to show the commission of another crime by the defendant." (Emphasis added.)
 {¶ 13} The statute and rule must be read in harmony with each other. Ali, supra, citing State v. Broom (1988), 40 Ohio St.3d 277, 281. Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law regarding evidence of other acts, the standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. Ali, supra, citing Broom,
40 Ohio St.3d at paragraph one of the syllabus. However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court "occupies a `superior vantage' in determining the admissibility of evidence." Ali, supra, citing State v. Rutledge (Nov. 19, 1997), 9th Dist. No. 96CA006619.
 {¶ 14} The Supreme Court of Ohio has articulated two requirements for the admission of other acts evidence. Broom,40 Ohio St.3d at 282-83. First, substantial evidence must prove that the other acts were committed by the defendant as opposed to another person. Id. Second, the other acts evidence must fall within one of the theories of admissibility enumerated in Evid.R. 404(B). Id. See, also, State v. Lowe (1994),69 Ohio St.3d 527, 530, 1994-Ohio-345.
 {¶ 15} Proof of one of the purposes set forth in Evid.R. 404(B) must go to an issue which is material in proving the defendant's guilt for the crime at issue. State v. DePina (1984), 21 Ohio App.3d 91, 92, citing State v. Burson (1974), 38 Ohio St.2d 157, 158. In the instant case, Mr. McAdory was charged with, inter alia, three counts of rape, in violation of R.C. 2907.02(A)(1)(b). The record indicates that Mr. McAdory's identity as the rapist was controverted; and his identity as the perpetrator is certainly a material issue. See Depina,21 Ohio App.3d at 92, citing Burson, 38 Ohio St.2d at 158. While Evid.R. 404(B) explicitly mentions identity as a theory of admissibility for other acts evidence, R.C. 2945.59 does not. However, it has been held that the issue of identity is to be included within the concept of "scheme, plan, or system[,]" as stated in R.C. 2945.59. Broom, 40 Ohio St.3d at 281.
 {¶ 16} Evidence of other acts may prove the issue of identity in two instances. The first instance is when the other acts "`form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.'" Lowe, 69 Ohio St.3d at 531, quoting Statev. Curry (1975), 43 Ohio St.2d 66, 73. The second instance, which guides our analysis in the instant case, is when the evidence of other acts establishes a modus operandi, a "unique, identifiable plan of criminal activity[,]" that is applicable to the crime with which defendant is charged. Lowe, 69 Ohio St.3d at 531, quoting State v. Jamison (1990),49 Ohio St.3d 182, syllabus. A certain modus operandi provides a
"behaviorial fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." Lowe, 69 Ohio St.3d at 531.
 {¶ 17} Other acts evidence, in order to prove identity through a modus operandi, must be related to and share common features with the offense at issue. Id. When such evidence establishes an idiosyncratic pattern of criminal conduct, it is not necessary for the offense at issue to be near in time and place to the other acts introduced into evidence; "the probative value of such conduct lies in its peculiar character rather than its proximity to the event at issue." DePina,21 Ohio App.3d at 92; see, also, State v. Lillie (Apr. 22, 1992), 9th Dist. No. 15359. Furthermore, these other acts need not be the same or even similar to the offense in question, so long as they indicate a modus operandi attributable to the defendant. Lowe, 69 Ohio St.3d at 531, citing Statev. Hutton (1990), 53 Ohio St.3d 36, 40.
 {¶ 18} In the instant case, the evidence of Mr. McAdory's prior sexual acts and corresponding convictions satisfy the Supreme Court's two prong test governing other acts evidence. See Broom,40 Ohio St.3d at 282-83. First, it is rather unnecessary to explicitly to point out, but we do nevertheless for the sake of presenting a thorough analysis, that the admittance into evidence of certified copies of the journal entries indicating Mr. McAdory's prior convictions for rape and gross sexual imposition, substantially prove that these other incidents were committed by Mr. McAdory. See id. As to the second prong, Mr. McAdory claims that the exceptions set forth in Evid.R. 404(B) and R.C. 2945.59 are not applicable to the facts herein. However, as we will flesh out in our discussion of the record infra, these prior acts prove a modus operandi applicable to Mr. McAdory, thereby, tending to prove the identity of Mr. McAdory as the perpetrator of the rape in this case. See Lowe,69 Ohio St.3d at 531; see, also, R.C. 2945.59 and Evid.R. 404(B).
 {¶ 19} In their case-in-chief, the State presented evidence of Mr. McAdory's engagement in prior sexual acts with other victims, through the testimony of police officers involved in each respective case and the testimony of the prior victims themselves. The first victim-witness testified that she had been raped by Mr. McAdory in January 1998, when she was 14 years old. She testified that she had met Mr. McAdory at a party being held at the house of a girl whom Mr. McAdory was dating at that time. She testified that while she was using the bathroom during the party, Mr. McAdory attempted to enter the bathroom, and said to her that if she did not open the door for him, that he would "break it down." She testified that she was helped to a bedroom, and that Mr. McAdory lay down on top of her, began to remove her pants, and inserted his penis into her vagina. She also testified that he was holding her down on the bed during the incident.
 {¶ 20} Detective Jeffery Flaker testified after this witness. Detective Flaker was employed by the Barberton police department at the time of the 1998 incident, and had conducted this rape investigation. Detective Flaker's testimony expounded on the facts of this case, adding that Mr. McAdory had also "rubbed her vagina with his hand, [and] then inserted his penis into her." He also testified that during his investigative interview of Mr. McAdory, Mr. McAdory had denied raping or inserting himself into this witness. During the direct examination of Detective Flaker, the State introduced a certified copy of a journal entry of Mr. McAdory's conviction for rape based on this incident.
 {¶ 21} A second victim-witness testified on behalf of the State. She testified that Mr. McAdory had raped her in July 1991, when she was 13 years old. The witness testified that she had met Mr. McAdory at her brother's apartment, at which point Mr. McAdory inquired into her age and subsequently misrepresented himself to be only 16 years old. She testified that later the same day, Mr. McAdory invited the witness to his apartment, where they watched television together, and "talked about kid stuff, different videos, [and] things like that." She testified that he later picked her up and "forc[ed] intercourse on [her.]" Additionally, the witness testified that after the incident Mr. McAdory prevented her from leaving without first kissing him. The witness testified that when she returned to Mr. McAdory's apartment later that evening with her mother and sister to show them where the incident occurred, Mr. McAdory denied to her mother and sister that the incident occurred, and stated that he did not even know the witness.
 {¶ 22} Detective Ronald Perella, who had investigated this case, also testified. Detective Perella testified that the witness had met Mr. McAdory through a relative, and that Mr. McAdory had passed himself off as a 14 year-old to the witness. He also testified that Mr. McAdory had taken off the witness's pants and underwear and "forcibly entered her vaginally" with his penis. During his testimony, the State introduced a certified copy of the journal entry reflecting Mr. McAdory's conviction for a sex crime involving a child based on this incident.
 {¶ 23} Finally, a third victim-witness testified on behalf of the State. The witness testified that she knew Mr. McAdory through his younger sister, and that he had told his sister that he thought the witness was "cute." She further testified that whenever he answered the phone when she would call to speak with his sister, that he would start conversations with her. The witness also testified that the incident occurred in 1992 when she was 12 years old. She testified that on the day of the incident, Mr. McAdory asked if he could come to her house, but that she did not agree to him coming over her house. She testified that he showed up anyway, and that she let him in because he was her friend's brother and that therefore she did not think there would be a problem. She testified that after he entered her house he asked her for a hug, kissed her on the cheek and lips, told her that she was beautiful, and then suggested that they lay down on the couch together to watch television. She further testified that he then grabbed her, put her on her back, laid on top of her, and pulled down her shorts. She testified that he then inserted his penis into her vagina. The witness testified that after he was finished with her, he stated that "[she] was the best girlfriend that he ever had."
 {¶ 24} Additionally, the third victim-witness testified that a second incident involving her and Mr. McAdory occurred a few weeks later. She testified that she went over to Mr. McAdory's house to play with his sister, but that when she arrived no one except Mr. McAdory and a friend of his were present. She further testified that Mr. McAdory said that his sister would be home soon, and thereafter took her upstairs and showed her his sister's and mother's rooms. She testified that while in his mother's room, Mr. McAdory pushed her down on the bed, climbed on top of her, and sat on her chest. She testified that he pulled out his penis and attempted to have her perform fellatio on him. She also testified that as she tried to push him off of her, he tried to hold her arms down.
 {¶ 25} Detective Lewis Hayslip testified that he had investigated the incidents concerning the third witness on behalf of the Akron Police Department. Detective Hayslip testified that Mr. McAdory was charged with three counts of rape, and that Mr. McAdory pled guilty to two counts of gross sexual imposition for this incident. During Detective Hayslip's testimony, the State introduced a certified copy of a journal entry reflecting Mr. McAdory's conviction for these incidents.
 {¶ 26} Mr. McAdory argues in support of his third assignment of error, that, pursuant to Evid.R. 609, the use of evidence of a prior conviction of the accused, other than for the purpose of attacking the credibility of a witness, is prohibited. However, Mr. McAdory's application of Evid.R. 609 to the facts of this case is incorrect. Evid.R. 609 provides, that, when attacking the credibility of a witness, certain prior convictions of the accused or a witness may be introduced into evidence, subject to certain limitations as set forth in that rule. In the instant case, evidence of these prior convictions was introduced on direct examination, and not in the process of impeaching these witnesses. As discussed supra in our analysis of Mr. McAdory's first and second assignments of error, evidence of the prior crimes was offered as evidence of prior sexual acts performed by Mr. McAdory in accordance with Evid.R. 404(B). See Evid.R. 404(B) and R.C. 2945.59. Thus, Evid.R. 609 has no application to Mr. McAdory's argument in support of his third assignment of error.
 {¶ 27} The evidence of these other acts clearly demonstrates a unique, identifiable plan of criminal activity that is applicable to Mr. McAdory with respect to the incident in the instant case. See Lowe,69 Ohio St.3d at 531, quoting Jamison, 49 Ohio St.3d at syllabus. Particularly, this evidence indicates a "fingerprint" which consists of befriending vulnerable young girls, isolating them, and performing forced sexual intercourse with them. Mr. McAdory suggests that these other acts are too far removed in time and are not similar to the incident in question. However, the fact that these incidents occurred between 1991 and 1998 has no bearing on the admissibility of this evidence. The fact patterns presented by the other acts evidence are similar to the facts of the instant case, and establish a peculiar and unique pattern of activity which tends to identify Mr. McAdory as the perpetrator of the incident in the instant case. See DePina, 21 Ohio App.3d at 92.
 {¶ 28} Based on the foregoing, we conclude that the evidence of other acts and the corresponding convictions introduced by the State in their case-in-chief was properly admitted as probative of the factors articulated in R.C. 2945.59 and Evid.R. 404(B). Because we conclude that the trial court properly admitted the evidence of other acts and the convictions, this Court also finds that the trial court's admission of this evidence was not arbitrary, unreasonable and unconscionable, and does not demonstrate perversity of will, passion, prejudice, partiality, or moral delinquency. See Schafer, 115 Ohio App.3d at 642, Pons,66 Ohio St.3d at 621. Thus, we find that the trial court did not abuse its discretion when it admitted the other acts evidence as well as the journal entries of Mr. McAdory's prior convictions for sex-related crimes. Therefore, we refuse to overturn the trial court's judgment in the instant case. See Ditzler, supra. Accordingly, Mr. McAdory's first, second, and third assignments of error are overruled.
 B. Fourth Assignment of Error
"Appellant mcadory was denied his right to due process of law and a fair trial by the state's introduction of police officer's testimony concerning the other acts evidence."
 {¶ 29} In his fourth assignment of error, Mr. McAdory contends that he was denied his rights to due process and a fair trial when the State introduced the testimony of the individual investigating detectives regarding the similarity of each of these prior sexual conduct cases to the instant case. We disagree.
 {¶ 30} Mr. McAdory oddly supports this assignment of error by citing to a line of cases which state the general rule, that, when a witness is cross-examined and a conviction is being introduced to impeach the credibility of this witness, a trial court may limit the questioning to the "name of the crime, the time and place of conviction and the punishment imposed[.]" State v. Amburgey (1987), 33 Ohio St.3d 115, syllabus; see, also, State v. Wright (1990), 48 Ohio St.3d 5, 6. Although he does not explicitly state so, Mr. McAdory seems to suggest that the trial court should have limited the questions regarding Mr. McAdory's prior convictions to not include testimony as to the similarities between these prior convictions and the incident involved in the instant case.
 {¶ 31} First, we point out that the State's introduction of evidence of Mr. McAdory's prior convictions was brought out on direct examination, not on cross-examination. Therefore, Amburgey and the cases which state this general rule with respect to cross-examinations have no application to the instant case and do not serve to support Mr. McAdory's fourth assignment of error. Second, an appellant bears the burden of affirmatively demonstrating the error on appeal. Angle v. W. Res. Mut.Ins. (Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086. Particularly, an appellant must provide citations to authorities supporting the arguments in his brief, as required by App.R. (16)(A)(7) and Loc.R. 7(A)(6). Angle, supra; Frecska,
supra. As Mr. McAdory has failed to provide any other citations to authorities to support his fourth assignment of error, Mr. McAdory has failed to meet his burden of demonstrating this error. See Angle, supra;Frecska, supra.
 {¶ 32} We reiterate that the admission of evidence is within the sound discretion of the trial court. See Ditzler, supra. Furthermore, any comparisons between Mr. McAdory's prior acts and the incident at issue in this case are merely cumulative in nature. Furthermore, the testimony of each investigator as to the similarities simply serves as an exercise of the analytical comparison that necessarily occurs each time that such similar acts are properly admitted into evidence. That is, such a comparison is inherent in the process of establishing a unique pattern of activity to prove the identity of the perpetrator. See Lowe,69 Ohio St.3d at 531. Therefore, we find that the trial court's decision to allow the testimony regarding the similarities between the prior crimes and the incident in the instant case did not constitute an abuse of discretion. See Ditzler, supra. Accordingly, Mr. McAdory's fourth assignment of error is overruled.
 C. Fifth Assignment of Error
"Appellant mcadory was denied his right to a fair trial and due process of law by the admission into evidence of the lead detective's reading into evidence from his report."
 {¶ 33} In his fifth assignment of error, Mr. McAdory avers that he was denied his rights to due process and a fair trial, when, during his deposition, Detective Benson was allowed to read into evidence his notes from his interview of Mr. McAdory regarding the incident in the instant case.
 {¶ 34} Our review is limited to the record provided by the appellant for his appeal. App.R. 9; see, also, App.R. 12(A)(1)(b). App.R. 9(B) provides that it is an appellant's duty to ensure that the record, or the portion necessary for review on appeal, is filed with the appellate court. State v. Burt, 9th Dist. No. 20960, 2003-Ohio-4265, at ¶ 8, citing State v. Sugalski, 9th Dist. No. 02CA0054-M, 2002-Ohio-6767, at ¶ 11; see, also, App.R. 10(A) and Loc.R. 5(A). Furthermore, an appellate court's review on appeal is limited to those materials in the record before the trial court. Yun v. Yun, 5th Dist. No. 2002CA00353, 2003-Ohio-2644, at ¶ 33.
 {¶ 35} In the instant case, the docketing statement indicates that the record on appeal is to include the original papers and exhibits filed in the trial court, a certified copy of the docket and journal entries, and a full or partial transcript of proceedings before the trial court. The record in this case indicates that a videotape of this deposition was played for the jury during trial. However, the record indicates that this videotape was neither admitted into evidence at trial; nor otherwise made part of the record before the trial court. Since Mr. McAdory has failed to demonstrate the error on appeal with respect to his fifth assignment of error, we decline to address it. Accordingly, Mr. McAdory's fifth assignment of error is overruled.
 III. {¶ 36} Mr. McAdory's first, second, third, fourth, and fifth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. and Baird, J., concur.
[1] The counts as stated in this opinion are based on the counts as presented in the supplement to the indictment filed on October 15, 2002. The State originally indicted Mr. McAdory with the following: (1) one count of rape, in violation of R.C. 2907.02(A)(1)(b), with a sexually violent predator specification, in violation of R.C. 2941.148; (2) one count of kidnapping, in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification, in violation of R.C. 2941.148, and a sexual motivation specification, in violation of R.C. 2941.147; and (3) one count of public indecency, in violation of R.C. 2907.09(A)(1). The State filed a supplement to the original indictment, charging Mr. McAdory with (1) two additional counts of rape, in violation of R.C.2907.02(A)(1)(b), with two sexually violent predator specifications, in violation of R.C. 2941.148; (2) one additional count of kidnapping, in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification and a sexual motivation specification; and (3) one additional count of public indecency, in violation of R.C. 2907.09. On December 10, 2002, the State filed a motion for amendment and notification of its dismissal of the original indictment and proceeding to trial solely on the charges noted in the supplement to the original indictment. In a journal entry filed on January 16, 2003, the trial court ordered the three counts contained in the original indictment relating to rape, kidnapping, and public indecency, to be dismissed.