**The STATE of Ohio, Appellee,**

v.

**WILKINS, Appellant.**

[Cite as *State v. Wilkins* (1999), 135 Ohio App.3d 26.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19315.

Decided Sept. 29, 1999.

**28**

*Michael T. Callahan,* Summit County Prosecuting Attorney, and *Paul Michael Maric,* Assistant Prosecuting Attorney, for appellee.

*Kirk A. Migdal,* for appellant.

BATCHELDER, Judge.

Appellant, Randolph Wilkins, appeals his conviction in the Summit County Court of Common Pleas. We reverse.

On December 31, 1997, Wilkins was indicted by the Summit County Grand Jury for the rape of Shauneeka Mishauna Wilson, in violation of R.C. 2907.02(A)(1)(b). The indictment charged that the rape occurred on or about July 25, 1997. The state filed a notice of intent to use similar-act evidence with the trial court on June 18, 1998. The proffered similar-act evidence consisted of the testimony of Rita Warren, whom Wilkins had raped in December 1985. The state wished Rita Warren to testify concerning only the 1985 rape, of which Wilkins had been previously convicted. The state asserted that her testimony was admissible as previous-act evidence due to its relevance to the current charge against Wilkins. On June 29, 1998, after a hearing, the trial court granted the state approval to introduce similar-act evidence at trial.

A jury trial commenced on August 31, 1998. On September 3, 1998, the jury returned a verdict of guilty. Wilkins's sentencing hearing was held on September 11, 1998. He was sentenced to life in prison and found to be a sexual predator. This appeal followed.

Wilkins asserts one assignment of error:

"The trial court erroneously admitted prejudicial and improper testimony regarding the defendant's prior rape case over the objection of defendant."

Wilkins asserts that the trial court erred in admitting testimony concerning his prior rape conviction. He contends that the testimony was not relevant to show identity, common plan or scheme, motive, opportunity, intent, or absence of mistake or accident, but rather that it had no relevance at trial but to show a propensity to commit the crime for which he was on trial. Moreover, Wilkins

argues that evidence of prior crimes that is relevant only to show one's propensity to commit the crime charged is improper. We agree.

■■■ " 'The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.' " *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791, quoting *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *State v. Lowe* (1994), 69 Ohio St.3d 527, 532, 634 N.E.2d 616, 620, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. "However, where the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion." *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 99, 521 N.E.2d 1091, 1098, fn. 10. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).

■■ Generally, evidence of prior criminal acts, wholly independent of the crime for which defendant is on trial, is inadmissible. *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 20 O.O.3d 411, 411–412, 422 N.E.2d 855. R.C. 2945.59 codifies the exceptions to this rule, providing:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid.R. 404(B) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evid.R. 404(B) is in accord with R.C. 2945.59. *State v. Broom* (1988), 40 Ohio St.3d 277, 281, 533 N.E.2d 682, 689. "The issue of identity, although not listed in the statute, has been held to be included within the concept of scheme, plan or system." *Id.* Hence, it is necessary to determine whether any of the matters

enumerated in R.C. 2945.59 were relevant at trial and, if so, whether the testimony that the prosecution elicited regarding other acts of the defendant tended to prove the relevant enumerated matter. *State v. Curry* (1975), 43 Ohio St.2d 66, 70, 72 O.O.2d 37, 39–40, 330 N.E.2d 720, 724.

■■ "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *Broom,* 40 Ohio St.3d 277, 533 N.E.2d 682, at paragraph one of the syllabus. Moreover, evidence of other acts by a defendant is admissible only when it tends to show one of the matters enumerated in the statute and only when the evidence offered is relevant to prove that the defendant is guilty of the offense in question. *State v. Burson* (1974), 38 Ohio St.2d 157, 158, 67 O.O.2d 174, 174–175, 311 N.E.2d 526, 528.

At trial, Rita Warren, whom Wilkins had been previously convicted of raping, testified concerning how she met Wilkins. She continued on to describe the details of how the rape occurred:

"Q. What happens after he parked on the dead end street?

"MS. MILLHOFF [counsel for Mr. Wilkins]: Objection.

"THE COURT: Overruled.

"A. Then he told me that he wanted to have sex with me and I stated no. Then we struggled and then he took it his way.

"Q. Okay. When you say you struggled, how did you struggle?

"A. First I tried to break through the passenger window out because the door didn't work because the car had been in a accident [*sic* ] previously and I didn't succeed at that, so then I tried to fight him off and then he bit me and I was screaming. He was covering my mouth up and stuff like that.

"Q. Did there come a time when he threatened you?

"A. Yes, he did threaten me.

"Q. What did he say to you?

"A. He told me if I didn't give it up willingly, he would take it because he knows that [it] is still good 30 minutes after death.

"Q. Okay. Did you want to have sex with him?

"A. No.

"Q. Did you have any desire to have sex with him?

"A. No.

"Q. After he threatened you, what did you do?

"A.   Then after he told me that, he reminded me that he would kill me if I didn't give it to him, so then I just didn't fight anymore.

"Q.   Okay.   And what happened after you stopped fighting, what did he do to you?

"MS. MILLHOFF:  Objection.

"THE COURT:  Overruled.

"MS. MILLHOFF:  Your Honor, I would indicate for the record a continuing objection to this entire line of questioning.

"THE COURT:  So noted.

"Q.   I'm sorry, go ahead.

"A.   Then, excuse me, I forgot what you asked.

"Q.   That's fine.   You indicated that at some point you stopped fighting?

"A.   Yes.

"Q.   Stopped fighting back.   What happens after you stop fighting back?

"A.   Then he had intercourse with me.

"Q.   Okay.   Again, did you want to have intercourse with him?

"A.   No.

"Q.   After he had sexual intercourse with you, what happened next?

"A.   Then he put on his clothes and I put my pants back on and then he took me home.

"Q.   Okay.   Did he threaten you again?

"MS. MILLHOFF:  Objection, leading.

"THE COURT:  She may answer.   Don't lead, Mr. Greven.

"A.   He told me that the two people that he were [*sic*] talking to in the bar, that they would come after me and he said that he would get me and he would leave town."

■   The testimony of Rita Warren did not comport with the requirements of Evid.R. 404(B) or R.C. 2945.59.   The state argues that her testimony was relevant to show either identity or a common plan or scheme.   Identity, however, was not a material issue in the state's case against Wilkins.   Wilkins admitted driving Shauneeka to the video store and never raised a defense of mistaken identity.   The issue at trial was, rather, a factual dispute concerning Wilkins's conduct when he was with Shauneeka.   Moreover, the past crime and the present charge are not factually similar, except in their most general description.   Hence, we conclude that identity was not a material issue properly subject to proof by

other-acts evidence in the trial court below. See *Curry*, 43 Ohio St.2d at 73, 72 O.O.2d at 41, 330 N.E.2d at 725–726.

The state's second asserted basis for admissibility, that the 1985 rape was relevant to show Wilkins's scheme, plan, or system, is also flawed. Other-acts testimony is relevant and, hence, admissible, under the scheme, plan, or system exception of R.C. 2945.59 and Evid.R. 404(B) "where those acts form part of the immediate background of the crime charged, and hence are 'inextricably related' to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." *Thompson*, 66 Ohio St.2d at 498, 20 O.O.3d at 412, 422 N.E.2d at 856.

There was no evidence adduced during the proceedings below that would connect the rape of Rita Warren, some twelve years prior to the current charges, to the charge Wilkins faced at trial. Moreover, the state did not assert that the rape of Rita Warren was accomplished to further a common plan or scheme to rape Shauneeka. Hence, we conclude that the trial court erred by admitting Rita Warren's testimony. Moreover, due to the inflammatory nature of Rita Warren's testimony, we conclude that Wilkins was prejudiced by the admission of her testimony at trial. Wilkins's assignment of error is sustained.[1] The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., and WHITMORE, J., concur.

---

1. The state asserts that the trial court's limiting instruction was sufficient to cure any error, which occurred in admitting the evidence of prior acts. However, "[t]he existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand. For this reason, we do not consider the trial court's admonitions to the jury that [defendant's] prior convictions are immaterial to his guilt of the present charge sufficient to cure the error." *State v. Allen* (1987), 29 Ohio St.3d 53, 55, 29 OBR 436, 438, 506 N.E.2d 199, 201. Hence, we conclude that, due to the inflammatory nature of Rita Warren's testimony about the facts of the previous rape, the trial court's limiting instruction was inadequate to remedy the effect of the improperly admitted evidence on the jury.