WILKINS, Appellant,

v.

WILKINSON et al., Appellees.

[Cite as *Wilkins v. Wilkinson,* 157 Ohio App.3d 209, 2004-Ohio-2530.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–502.

Decided May 18, 2004.

David H. Bodiker, State Public Defender, and Alison M. Clark, Assistant Public Defender, for appellant.

Jim Petro, Attorney General, Scott M. Campbell and Philip A. King, Assistant Attorneys General, for appellees.

---

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Randolph Wilkins, appeals from the decision and judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Reginald Wilkinson, Cynthia Mausser, Trayce Thalheimer, and the Ohio Parole Board, and denying Wilkins's motion for summary judgment. Because the use of videoconferencing technology for witness testimony during the parole-revocation hearing satisfied the Confrontation Clause under these circumstances, we affirm.

{¶ 2} On December 31, 1997, while on parole from a 1985 rape conviction, Wilkins was indicted by the Summit County Grand Jury for the rape of Shauneeka Mishauna Wilson. The alleged rape occurred on or about July 25, 1997. Wilson was ten years of age at the time.

{¶ 3} Wilkins was returned to the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") as a parole violator. The case was tried to a jury and, on September 3, 1998, Wilkins was found guilty. Wilkins was sen-

tenced to life in prison and found to be a sexual predator. Wilkins appealed, and on September 29, 1999, the Ninth District Court of Appeals reversed Wilkins's conviction. The Ninth District Court of Appeals found that the trial court erred in admitting testimony concerning Wilkins's 1985 rape conviction. *State v. Wilkins* (1999), 135 Ohio App.3d 26, 732 N.E.2d 1021. The court held that the testimony did not meet the requirements of Evid.R. 404(B) or R.C. 2945.59 and, as such, was inflammatory and prejudicial. Id., 135 Ohio App.3d at 32, 732 N.E.2d 1021. As a result, the case was remanded to the Summit County Court of Common Pleas. On September 15, 2000, the state dismissed the rape charge against Wilkins.

{¶ 4} ODRC continued to hold Wilkins as a recommissioned parole violator at the Southern Ohio Correctional Facility ("SOCF"), because he allegedly committed the following violations: (1) he had sexual relations with Wilson who was ten years old at the time of the encounter; (2) he changed his residence without permission of his parole officer; (3) he failed to report to his parole officer; (4) he had contact with a female under the age of 21 without permission of his parole officer; (5) he operated a motor vehicle in which a female was the passenger, without the permission of his parole officer; and (6) he was in the state of Louisiana without the permission of his parole officer.

{¶ 5} On October 27, 2000, Wilkins was notified that he was subject to a parole revocation hearing to be conducted via videoconferencing. On November 14, 2000, Wilkins filed a complaint for injunctive relief and motion for temporary restraining order, asserting that under *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the scheduled revocation hearing by videoconferencing would violate Wilkins's right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees filed a memorandum opposing Wilkins's motion for temporary restraining order. Thereafter, the trial court conducted an oral hearing to allow both Wilkins and appellees to present their arguments. At the hearing, the trial court asked:

"THE COURT: Is there any particular reason with this case? I mean why this case? Is there a reason? Is Shauneeka—what was her age, the alleged rape victim, is she going to be a witness, and is she as I remember young, is she 12, 13, something like that?

"MR. HARDWICK: Your Honor, I believe she is 14 according to the birth date in the criminal transcript. She's currently 14.

"MR. ZETS: That's correct, Your Honor. There's no specific reason why this case as opposed to any other case. It was just a determination was made they were going to use it in this case. I don't think they should be denied the ability with it—starting with this case going forward with it or this is one of the first few it's being used.

"The whole idea in the plaintiff's argument is based upon protecting identity of witnesses, that's not an issue in this case. Because we are not talking about not allowing the plaintiff to confront those witnesses, it's the method by which they confront those witnesses. So the fact that the victim in this case will be in Akron, Ohio, by television—granted she is tender age, I believe she has—she might be somewhat mentally deficient or mentally challenged, in that respect I don't think that plays a huge role in determining whether or not they go to Lucasville or people in Lucasville go to Akron. It's just technology the department would like to use under *Morrissey v. Brewer.*"

{¶ 6} On November 20, 2000, appellees conducted the parole revocation hearing. Wilkins, his counsel, and the hearing officer were present at SOCF. The parole officer and the state's witnesses were present and testified via videoconferencing technology from Akron, Ohio. On December 5, 2000, the trial court denied Wilkins's motion for a temporary restraining order. On December 8, 2000, the Parole Board determined that Wilkins had violated his parole.

{¶ 7} On December 15, 2000, Wilkins filed an amended complaint for injunctive relief alleging that the use of the videoconferencing technology during his parole revocation hearing deprived him of the right to confront witnesses under the Fifth and Fourteenth Amendments of the United States Constitution. Appellees responded with a motion to dismiss for failure to state a claim upon which relief can be granted. Civ.R. 12(B)(6). On March 7, 2001, the trial court granted appellees' motion to dismiss, stating that "[t]hrough the use of video-conferencing equipment, plaintiff was able to view and question the witnesses, despite his not being physically present in the same room. Also, the due-process and confrontation rights in a parole-revocation hearing do not rise to the level of those in a trial proceeding."

{¶ 8} Wilkins appealed to this court. In *Wilkins v. Wilkinson* (Jan. 15, 2002), Franklin App. No. 01AP–468, 2002 WL 47051, this court reversed, holding that Wilkins had alleged sufficient facts to state a constitutional claim against appellees. Specifically, this court noted that Wilkins alleged that the video camera was positioned in such a way as to prevent him and his counsel from making eye contact with the witnesses, and that the video picture froze on several occasions, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses. These allegations were sufficient to allow Wilkins's claim to survive a Civ.R. 12(B)(6) motion. However, this court did not address whether the use of videoconferencing technology in a parole revocation hearing would satisfy the Confrontation Clause, when the equipment and procedure utilized is functionally equivalent to that accorded live, in-person testimony.

{¶ 9} On remand to the trial court, the parties filed cross-motions for summary judgment. The parties attached as exhibits to the motions, among other things,

videotapes of the parole revocation proceedings, the Release Violation Hearing Summary prepared by Hearing Officer Trayce Thalheimer, Thalheimer's affidavit, and the deposition transcripts of Chief Hearing Officer Cynthia Mausser and Thalheimer. The Release Violation Hearing Summary provided:

"For the panel[']s information this hearing was held at SOCF where the inmate, HO, public defender and public defender[']s witness were present. The APA, and their witness' [sic] were at the Akron office. This hearing was held via teleconference. This was against the wishes of the PD and a good deal of time was used discussing the objection of the hearing. It was determined in court that the hearing could take place. The PD wanted all parties to be aware that she objected to the way the proceedings were taking place and the fact that the victim would not be present face to face with the subj. in the room during testimony. The decision to hold the hearing this way was agreed to with the APA and the Chief Hearing officer. This was due to the mental and emotional status of the victim."

{¶ 10} The trial court granted appellees' motion for summary judgment, finding that: (1) appellees had shown good cause for using the videoconferencing technology; (2) the utilization of videoconferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses; and (3) in any event, Wilkins admitted facts establishing most of the alleged parole violations.

{¶ 11} Wilkins appealed, assigning as error the following:

"FIRST ASSIGNMENT OF ERROR: In violation of Randolph Wilkins[']s right to due process of law, the trial court erred in finding as a matter of law, that Respondents showed good cause for holding the hearing by video conference due to the age and mental condition of one witness and did not require any showing of cause for the other three witnesses who testified by videoconference.

"SECOND ASSIGNMENT OF ERROR: The trial court erred in violation of Mr. Wilkins's right to due process of law by finding that this videoconference was a sufficient approximation of a face-to-face encounter and that Dr. Stephen Acker's report was insufficient to bar summary judgment for Respondents.

"THIRD ASSIGNMENT OF ERROR: In violation of Randolph Wilkins[']s right to due process of law, the trial court erred in finding that Mr. Wilkins's admissions as to non-criminal, technical parole violations obviated any problems with confrontation regarding the rape allegations at his parole revocation hearing."

{¶ 12} An appellate court's review of summary judgment is conducted under a de novo standard. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the parties moving for

summary judgment demonstrate that (1) no genuine issue of material fact exists; (2) the moving parties are entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 13} For ease of analysis, we address Wilkins's second assignment of error first. It is well established that a parolee contesting revocation of parole does not have the same confrontation rights as does a trial defendant. *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 16, 577 N.E.2d 352; *Morrissey* at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. Parole revocation proceedings and trial proceedings are distinct, and a parolee is not entitled to the same level of due process protection as a trial defendant. See, e.g., *Coulverson* at 16, 577 N.E.2d 352 ("The Parole Board may admit hearsay."); *Barnett v. Ohio Adult Parole Auth.* (1998), 81 Ohio St.3d 385, 387, 692 N.E.2d 135 (per curiam) ("Parole and probation may be revoked even though criminal charges based on the same facts are dismissed, the defendant is acquitted, or the conviction is overturned, unless all factual support for the revocation is removed."); *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 661 N.E.2d 728, paragraph two of the syllabus ("Evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings."); see, also, *Wilson v. State* (1995), 101 Ohio App.3d 487, 491, 655 N.E.2d 1348 (noting that "there is no Eighth Amendment right to bail pending a parole revocation hearing").

{¶ 14} Although a parolee contesting revocation does not have the same due process rights as does a trial defendant, the United States Supreme Court has established a minimum due process threshold. In *Morrissey,* supra, the United States Supreme Court held that a parolee is entitled to the following due process protections at a parole revocation hearing:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Id., 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484.

{¶ 15} Similarly, Ohio Adm.Code 5120:1–1–18(A)(4)(c) states:

"(4) With respect to the hearing, the releasee has the following rights:

"\* \* \*

"(c) The right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation. In the event that confrontation is disallowed, specific reasons for the same shall be documented in the record of proceedings.

{¶ 16} Here, we find no error in the trial court's determination that the use of video-conferencing technology sufficiently permitted Wilkins and his counsel to observe and confront the witnesses, despite some minor technical difficulties that were resolved during the hearing.

{¶ 17} After reviewing joint exhibits 1–A and 1–B (videotapes of the parole revocation proceedings), the trial court determined as a matter of law that the use of videoconferencing technology during the hearing sufficiently permitted Wilkins and his counsel to observe and confront the witnesses during the parole revocation hearing. The trial court noted that the videotape shows the witnesses' bodies, as well as the immediate area around the witnesses. The trial court was also able to ascertain that the witnesses were clearly visible and could be heard. We also conclude that the use of videoconferencing technology permitted free and unimpeded visual and auditory communication between the hearing officer, witnesses, Wilkins, and the respective counsel. Therefore, the use of videoconferencing technology for witness testimony during Wilkins's parole revocation hearing was functionally equivalent to live, in-person testimony. Although the positioning of the camera and monitor at SOCF may not have been ideal—i.e., the camera was positioned slightly to the right of the monitor rather than being mounted directly on or above the monitor—we cannot conclude that this positioning denied Wilkins the right of confrontation in this parole revocation setting.

{¶ 18} We also agree with the trial court that Dr. Acker's report/affidavit does not create a material issue of fact barring summary judgment. A review of the videotape of the parole revocation hearing reveals that witnesses could be adequately seen and heard and that Wilkins's counsel could readily cross-examine the witnesses during the hearing. Dr. Acker's opinion that communicating by videoconferencing is less effective than communicating face-to-face does not create a material issue of fact with respect to whether due process requirements have been satisfied. That is primarily a question of law based upon facts that are undisputed.

{¶ 19} Because we have held that the use of videoconferencing technology during Wilkins's parole revocation hearing satisfied the Confrontation Clause, Wilkins's second assignment of error is overruled, and Wilkins's first assignment of error is moot. App.R. 12.

{¶ 20}  Wilkins contends in his third assignment of error that the trial court erred in finding his admission to a variety of "technical parole violations obviated any problems with confrontation regarding the rape allegations at his parole revocation hearing."  Although Wilkins denied that he committed a rape, he admitted facts establishing other parole violations.  Wilkins conceded that (1) he failed to report to his parole officer;  (2) he left the state without permission;  (3) he had contact with a female under age 21;  and (4) he rode in a vehicle with a female under age 21.  Wilkins also concedes these parole violations on page 28 of his brief.  ("His testimony included concessions that less serious charges were accurate.")  Moreover, these admissions have nothing to do with the use of videoconferencing technology because Wilkins testified in the physical presence of the hearing officer during the parole revocation hearing.

{¶ 21}  This court has previously held that minimum due process requirements are satisfied where the parolee admits the alleged parole violation at the revocation hearing.  *Helton v. Ohio Adult Parole Auth.* (June 26, 2001), Franklin App. No. 00AP–1108, 2001 WL 709946. This principle was recognized in *Morrissey,* supra, 408 U.S. at 490, 92 S.Ct. 2593, 33 L.Ed.2d 484, wherein the United States Supreme Court stated that "[i]f it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."

{¶ 22}  Here, because Wilkins made admissions establishing four out of the six alleged parole violations, minimum due process requirements were satisfied—at least with respect to the admitted violations.  Moreover, once a revocation hearing satisfies minimum due process requirements, the decision to deny parole is not subject to judicial review unless parole is revoked for a constitutionally impermissible reason.  *Helton,* supra, citing *Mayrides v. Ohio Adult Parole Auth.* (Apr. 30, 1998), Franklin App. No. 97APE08–1035, 1998 WL 211923. Under R.C. 2967.15, the Ohio Adult Parole Authority is authorized to revoke parole when the parolee has violated the terms and conditions of his parole.  *State ex rel. Nedea v. Capots* (1988), 40 Ohio St.3d 74, 75, 531 N.E.2d 707. Therefore, Wilkins's four parole violations were sufficient grounds for the revocation of his parole.  Wilkins's third assignment of error is overruled.

{¶ 23}  In conclusion, Wilkins's second and third assignments of error are overruled, Wilkins's first assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

LAZARUS, P.J., and BROWN, J., concur.