[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Marsh v. Tibbals,* Slip Opinion No. 2017-Ohio-829.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-829

THE STATE EX REL. MARSH, APPELLANT, *v.* TIBBALS, WARDEN, ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Marsh v. Tibbals,* Slip Opinion No. 2017-Ohio-829.]

*Habeas corpus and mandamus—Appellant failed to show that he is entitled to immediate release or that he has clear legal right to new parole-revocation hearing—Court of appeals' grant of summary judgment in favor of warden and Adult Parole Authority affirmed.*

(No. 2015-1841—Submitted January 10, 2017—Decided March 9, 2017.)

APPEAL from the Court of Appeals for Madison County, No. CA2015-04-013.

_____

**Per Curiam.**

{¶ 1} We affirm the Twelfth District Court of Appeals' denial of the petition for a writ of habeas corpus or, in the alternative, a writ of mandamus filed by

appellant, Stacey L. Marsh. That court correctly held that Marsh is not entitled to immediate release and thus is ineligible for habeas corpus relief. The court of appeals also correctly determined that Marsh is not entitled to a writ of mandamus to compel the Adult Parole Authority ("APA") to grant him a new parole-revocation hearing with court-appointed counsel.

### Facts and Procedural History

{¶ 2} Marsh is an inmate at the London Correctional Institution, where he has been serving the remainder of an indeterminate sentence since the APA revoked his parole in 2014.

### State and Federal Criminal Convictions

{¶ 3} In September 1985, the Madison County Court of Common Pleas sentenced Marsh to concurrent prison terms of 18 months for various fourth-degree felonies. In October 1985, the Lorain County Court of Common Pleas convicted Marsh of one count of receiving stolen property and sentenced him to one year in prison.

{¶ 4} In December 1985, Marsh pleaded guilty to robbery, forgery, and receiving stolen property in three separate Franklin County cases and was sentenced to an aggregate prison term of 4 to 15 years. Marsh was granted parole from these sentences in April 1989. But in April 1991, he was arrested in West Virginia and charged with multiple federal drug and weapons offenses. Marsh was convicted of all counts, and in February 1992, the United States District Court for the Southern District of West Virginia ordered him to serve a 324- to 405-month sentence in federal prison.

{¶ 5} In June 1992, the APA declared Marsh a parole violator effective April 2, 1991, as a result of his federal convictions. The APA also issued a warrant and detainer for his return to its custody upon the completion of his federal sentence.

**{¶ 6}** Beginning in June 2001 and continuing until November 2011, Marsh sent letters to various employees of the APA requesting that they lift the detainer, "recognize the judgment in [the Franklin County robbery] case * * * as being satisfied and complete" based on the time he was incarcerated for his federal convictions, and hold a parole-revocation hearing via videoconference.

**{¶ 7}** After completing his federal sentence, Marsh was returned to the custody of the APA on August 15, 2014. The APA provided Marsh with written notification of a "release violation hearing" to be held on September 15, 2014. On the form, which Marsh signed and dated, he "[a]dmit[ted] with [m]itigation" all the alleged parole violations. He also checked boxes indicating that he did not "request the presence of any witnesses/documents" or "representation or counsel" at the September hearing.

**{¶ 8}** At the hearing, Marsh admitted that his federal convictions were a violation of his release conditions and presented mitigating evidence. However, after considering the record as a whole, including Marsh's admissions and mitigation, the officer revoked his parole and recommended that the APA impose a 48-month sanction. The APA agreed with the recommendation and imposed a 48-month sanction. Marsh will become eligible for parole consideration again in August 2018. Marsh's request for reconsideration of the APA's decision was denied in December 2014.

*State Habeas Corpus Petition*

**{¶ 9}** On April 2, 2015, Marsh filed a petition for a writ of habeas corpus or, in the alternative, a writ of mandamus against appellees, Warden Terry Tibbals and the APA. He requested an order compelling Tibbals to immediately release him from prison "under the same terms and conditions of his original parole." Marsh also requested, in the alternative, an order compelling the APA to credit his time served from 2001 to 2011. Finally, he sought an order "compelling the [APA]

to grant [him] a new mitigation/revocation hearing with the appointment of counsel."

{¶ 10} The court of appeals granted summary judgment in favor of Tibbals and the APA and denied Marsh's requests for relief.

*Analysis*

*Summary-Judgment Standard*

{¶ 11} A court properly grants summary judgment "when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12, quoting Civ.R. 56(C). We review the court of appeals' decision granting summary judgment to Tibbals and the APA de novo. *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 9, citing *Troyer v. Janis*, 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶ 6.

*Habeas Corpus*

{¶ 12} An action in "habeas corpus will lie in certain extraordinary circumstances where there is an unlawful restraint of a person's liberty, notwithstanding the fact that only nonjurisdictional issues are involved, but only where there is no adequate legal remedy, e.g., appeal or postconviction relief." *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 186, 652 N.E.2d 746 (1995). However, even when the petitioner has no adequate legal remedy, habeas corpus relief generally is appropriate only when "the petitioner's maximum sentence has expired and he is being held unlawfully." *Heddleston v. Mack*, 84 Ohio St.3d 213, 214, 702 N.E.2d 1198 (1998).

{¶ 13} "The revocation of parole implicates a liberty interest which cannot be denied without certain procedural protections." *Jackson* at 186. In order to safeguard the liberty interests implicated by parole, this court has determined that due process requires that parolees have "certain rights, including the right to a

[revocation] hearing within a reasonable time following arrest." *Id.* However, the "operative event triggering any loss of liberty attendant upon parole revocation" is execution of and custody under the warrant issued upon a parole violation. *Moody v. Daggett*, 429 U.S. 78, 87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). *Accord State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 125, 609 N.E.2d 546 (1993) ("[U]nder federal due process principles, no liberty interest attaches until a parolee is taken into custody pursuant to the detainer. If a loss of liberty is attributable to detention for new crimes, the parole authority has no constitutional duty to hold an immediate parole revocation hearing, regardless of his request therefor"); *State ex rel. Brantley v. Ghee*, 83 Ohio St.3d 521, 522, 700 N.E.2d 1258 (1998) ("The APA has no legal duty to hold a final parole revocation hearing for Brantley during the time he is incarcerated on new criminal charges").

{¶ 14} First, Marsh argues that the APA was obligated to hold a revocation hearing as soon as the federal prison agreed to make him available for the hearing via videoconferencing technology. Marsh also urges this court to "declare that videoconferencing was equivalent to live and in person hearings regardless of geographical location."

{¶ 15} But irrespective of Marsh's request that the APA hold a revocation hearing by videoconference, the APA was under no duty to do so during Marsh's federal incarceration. *Brantley* at 522. The APA's duty to hold a revocation hearing did not arise until Marsh completed his federal sentence and the federal authorities transferred him into state custody in August 2014. *Moody* at 87; *Taylor* at 125.

{¶ 16} Contrary to Marsh's argument, the availability of videoconferencing technology did not trigger the APA's duty to hold Marsh's revocation hearing. Because Marsh was serving a sentence for federal convictions while on parole from his Ohio sentence, he was not entitled to a revocation hearing until the APA took custody of him after he completed his federal sentence. "Neither due process of

law nor R.C. 2967.15's or former Ohio Adm.Code 5120:1-1-19(A)'s 'reasonable time' requirement compels a final revocation parole hearing while an alleged parole violator is imprisoned pending prosecution for, or after conviction of, another crime." *Taylor*, 66 Ohio St.3d at 128, 609 N.E.2d 546.

{¶ 17} Marsh contends that the Tenth District Court of Appeals' decision in *Wilkins v. Wilkinson*, 157 Ohio App.3d 209, 2004-Ohio-2530, 809 N.E.2d 1206 (10th Dist.), conferred upon him a "reasonable expectation to a revocation/mitigation hearing [via videoconference] when he asserted his right to it." However, *Wilkins* did not confer any rights upon Ohio parolees; the court determined only that "the use of videoconferencing technology [by the APA] for witness testimony during the parole-revocation hearing satisfied the Confrontation Clause under the[ ] circumstances" of that case. *Id.* at ¶ 1.

{¶ 18} Second, Marsh contends that had the APA granted his request to hold his revocation hearing sooner via videoconference, it would have been required to give him credit for time served against any Ohio sentence resulting from the parole violations.

{¶ 19} However, under R.C. 2967.15(D), "[a] person who is a parolee * * * and who has violated a term or condition of the person's * * * parole * * * shall be declared to be a violator if the person is committed to a correctional institution outside the state to serve a sentence imposed upon the person by a federal court." R.C. 2967.15(C)(1) provides that "[t]he time between the date on which a person who is a parolee or other releasee is declared to be a violator * * * and the date on which that person is returned to custody in this state under the *immediate control of the adult parole authority shall not be counted as time served* under the sentence imposed on that person." (Emphasis added.)

{¶ 20} We have repeatedly rejected the same argument Marsh raises with respect to having his federal prison time count toward the 48-month sentence he received for violating parole. *See State ex rel. Gillen v. Ohio Adult Parole Auth.*,

6

72 Ohio St.3d 381, 381-382, 650 N.E.2d 454 (1995); *Hignite v. Cardwell*, 22 Ohio St.2d 146, 258 N.E.2d 443 (1970); *Armstrong v. Haskins*, 176 Ohio St. 422, 200 N.E.2d 311 (1964). Marsh is incorrect in asserting that his federal sentence would have been credited toward his state sentence for the parole violation had the APA granted him a revocation hearing by videoconference when he requested it.

**{¶ 21}** Marsh also claims that the court of appeals failed to address whether the September 2014 parole-revocation hearing was unreasonably delayed under the dictates of the consent decree established in *Kellogg v. Shoemaker*, 927 F.Supp. 244 (S.D.Ohio 1996). Under the *Kellogg* consent decree, inmates included in the class of persons to which *Kellogg* applied were entitled to a hearing "to determine whether revocation of parole is appropriate," "[t]he right to advance notice of the class member's rights at the hearing," and, "[w]here the class member alleges that there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and the reasons are complex or otherwise difficult for the class member to develop or present, the right to be represented by the Ohio Public Defender or private counsel (at the member's expense)." *Id.* at 247 (paragraphs V(a)(1), (3), and (6) of consent decree).

**{¶ 22}** Even assuming that Marsh is a member of the *Kellogg* class, his revocation complied with the consent decree because Marsh had an opportunity to present mitigating evidence and was given the opportunity to request representation by counsel.

**{¶ 23}** Marsh received a timely revocation hearing one month after being released from federal custody to the custody of the APA. Moreover, the APA revoked Marsh's parole after he admitted to the parole violations and after considering his mitigation, and imposed a 48-month sanction, making him not eligible for parole consideration again until 2018. Accordingly, Marsh has not served his maximum sentence and has not shown that he is being held unlawfully. The court of appeals correctly denied Marsh's request for a writ of habeas corpus.

*Mandamus*

**{¶ 24}** A relator seeking a writ of mandamus must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent official or governmental unit to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. The relator must prove entitlement to the writ by clear and convincing evidence. *Id.* at ¶ 13.

**{¶ 25}** Marsh seeks an order compelling the APA to "credit [him] for time he was available for return during the years 2001-2011." However, as discussed above, R.C. 2967.15(C)(1) specifically speaks to that argument—and repudiates it. Accordingly, the court of appeals correctly determined that Marsh failed to demonstrate a clear legal duty on the part of the APA or a clear legal right on his part to have any of his federal time credited toward his revocation time.

**{¶ 26}** Marsh argues that the court of appeals erred when it held that he did not have a clear legal right to a new parole-revocation hearing with court-appointed counsel. He contends that he was misinformed about his eligibility to have counsel appointed to represent him and was deceived into declining representation.

**{¶ 27}** We have held that "counsel is not automatically required * * * for mitigation hearings." *State ex rel. Stamper v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 85, 87, 578 N.E.2d 461 (1991). Under *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), counsel is constitutionally required when the parolee requests counsel "based on a timely and colorable claim * * * that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present."

**{¶ 28}** The evidence submitted to the court of appeals in support of granting summary judgment demonstrates that Marsh's parole-revocation hearing was not

one for which counsel was necessary. Marsh was informed of his right to request that any witnesses or documentary evidence be produced or that he be represented by counsel at his revocation hearing, and he expressly declined to make either request. He admitted to all the charged parole violations and submitted mitigating evidence during the hearing. Marsh's mitigation consisted of his personal history and claims that his criminal conduct was due to childhood trauma, that his federal sentence was disproportionate to his federal crimes, and that he was "no longer the same person" that he was when he committed his original crimes in Ohio decades earlier. The APA considered Marsh's mitigating evidence before revoking his parole. Marsh simply did not make a " 'colorable claim' of substantial, complex, or difficult mitigation factors requiring counsel." *Stamper* at 88, quoting *Gagnon* at 790.

{¶ 29} Marsh has failed to prove his entitlement to a writ of mandamus by clear and convincing evidence. The court of appeals correctly granted summary judgment in favor of Tibbals and the APA.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Stacey L. Marsh, pro se.

Michael DeWine, Attorney General, and M. Scott Criss, Assistant Attorney General, for appellees.

_____