[Cite as *State ex rel. Shine v. Ohio Dept. of Rehab. & Corr., Chambers-Smith, Dir.*, 2021-Ohio-4459.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael Shine, | : | |
| Relator, | : | |
| v. | : | No. 21AP-163 |
| Ohio Department of Rehabilitation and Correction, Annette Chambers-Smith, Director, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on December 16, 2021

**On brief:** *Patituce & Associates, LLC, Megan M. Patituce,* and *Joseph C. Patituce,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Tony H. Shang,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Michael Shine, initiated this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Department of Rehabilitation and Correction ("ODRC"), Annette Chambers-Smith, Director, to modify the date of Shine's next parole hearing so that it is no more than ten years from the date he was first eligible for parole. ODRC filed a motion to dismiss Shine's petition for a writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that

Shine could show neither a clear legal right to the requested relief nor a clear legal duty on the part of ODRC to provide such relief.  Thus, the magistrate recommends this court grant ODRC's motion to dismiss Shine's petition for a writ of mandamus.

{¶ 3}   Shine has filed objections to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).  Shine does not challenge the magistrate's recitation of the pertinent facts; however, he objects the magistrate's conclusions that Shine had no clear legal right to the requested relief and that ODRC had no clear legal duty to provide the requested relief.

{¶ 4}   As the magistrate sets forth in the recitation of facts, within months Shine was convicted and sentenced in two different criminal cases: (1) on July 28, 1999, a federal court sentenced Shine to 262 months of incarceration ("federal case"), and (2) on August 6, 1999, the Cuyahoga County Court of Common Pleas sentenced Shine to an aggregate term of 15 years to life ("state case"). The state case included instructions that Shine's sentence in the state case run concurrently with his sentence in the federal case.  Shine served his sentence in the federal case from September 17, 1999 to November 2, 2017, at which point he was transferred to the custody of ODRC.  Shortly after his transfer to ODRC custody, Shine received notice of his first parole eligibility hearing with an expected date of February 2018.  Following a continuance, the parole board denied Shine parole on May 17, 2018, by which time Shine had served 19 years in prison, and scheduled his next parole eligibility hearing for May 2028.  Shine argues that when ODRC held his first parole eligibility hearing more than four years after it was required to under Ohio Adm.Code 5120:1-1-10(A).  Thus, because Shine asserts his first parole eligibility hearing was untimely, he seeks a writ of mandamus to compel ODRC to hold his second hearing earlier to compensate for his untimely first hearing.

{¶ 5}   For this court to issue the requested writ of mandamus, Shine must show a clear legal right to the relief sought and that ODRC has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  As relevant here, Ohio Adm.Code 5120:1-1-10(B)(2) provides that "[i]n any case in which parole is denied at an inmate's regularly constituted parole hearing, the parole board shall * * * [s]et the time for a subsequent hearing, which shall not be more than ten years after the date of the

hearing." When ODRC denied Shine parole at the May 2018 hearing, it set the date for his next eligibility hearing for May 2028, ten years from the date of the parole hearing. Because he asserts his first parole eligibility hearing was untimely, Shine argues he has a clear legal right to have his next parole hearing occur on an accelerated schedule so that it occurs no more than ten years after when his first parole hearing should have taken place.

{¶ 6} In recommending that this court dismiss Shine's petition for writ of mandamus, the magistrate agreed with ODRC that Shine could not show he was entitled to an earlier date of his first parole eligibility hearing because he was in federal custody until November 2, 2017 and ODRC had no authority to determine Shine's parole eligibility until he was transferred to ODRC custody. We do not find it necessary to reach the question of whether ODRC had a clear legal duty to hold the *first* parole eligibility hearing for Shine while he was still in federal custody. Instead, we find that Shine cannot demonstrate he is entitled to the requested writ of mandamus because he does not demonstrate he has a clear legal right to have his *next* parole eligibility hearing occur less than ten years after the date of his first hearing.

{¶ 7} Based on the plain language of Ohio Adm.Code 5120:1-1-10(B)(2), when an inmate is denied parole at a hearing, the parole board shall set the time for the next hearing, and that time "shall not be more than ten years after the date of the hearing." Stated another way, the only clear legal right Shine has, under the express terms of the administrative code provision, is for the parole board to set a time for his next eligibility hearing and for that time to be not more than ten years after the date of the hearing at which his parole was denied. Here, ODRC held the first hearing on May 17, 2018, denied Shine's parole at that hearing, and set the date of the next hearing for May 2028, ten years after the date of the hearing. Thus, ODRC complied with the requirements of Ohio Adm.Code 5120:1-1-10(B)(2) in setting the time for Shine's next parole eligibility hearing. Shine simply does not point to any authority that would create a clear legal right for Shine to have his next parole eligibility hearing set for a date four years earlier than what ODRC has scheduled.

{¶ 8} Though Shine acknowledges the language of Ohio Adm.Code 5120:1-1-10(B)(2), he argues that ODRC's technical compliance with the administrative code provision in setting the date of his next parole eligibility hearing nonetheless deprives him

of due process. However, as this court has stated, "[b]ecause an Ohio inmate has no constitutional or statutory right to parole, he similarly has no right to earlier consideration for parole." *Festi v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1372, 2005-Ohio-3622, ¶ 15 (also stating "[j]ust as OAPA's denial of parole deprives an inmate of no protected liberty interest, OAPA's continuance of appellant's next parole hearing deprived appellant of no protected liberty interest"), citing *State ex rel. Vaughn v. Ohio Adult Parole Auth.*, 85 Ohio St.3d 378, 379 (1999). Moreover, the crux of Shine's argument here is that ODRC's scheduling of his *first* parole hearing may have violated his due process rights; however, he does not explain how ODRC's scheduling of the *next* hearing in compliance with Ohio Adm.Code 5120:1-1-10(B)(2) deprives him of due process. And as his petition for a writ of mandamus seeks to change the date of his *next* parole eligibility hearing, we find Shine is unable to demonstrate a clear legal right to anything other than what happened here: ODRC setting the time for a subsequent hearing not more than ten years after the date of the hearing. Thus, Shine cannot demonstrate he is entitled to a writ of mandamus.

{¶ 9} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined Shine is not entitled to the requested writ of mandamus, though we reach that conclusion for different reasons than the magistrate. Accordingly, we adopt the magistrate's factual findings, and, as outlined above, we adopt the magistrate's conclusions of law as modified. Therefore, we overrule Shine's objections to the magistrate's decision and grant ODRC's motion to dismiss Shine's petition for writ of mandamus.

*Objections overruled;*
*motion to dismiss granted.*

DORRIAN, P.J., and JAMISON, J., concur.

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael Shine, | : | |
| Relator, | : | |
| v. | : | No. 21AP-163 |
| Ohio Department of Rehabilitation and Correction, Annette Chambers-Smith, Director, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 31, 2021

*Patituce & Associates, LLC, Megan M. Patituce,* and *Joseph C. Patituce,* for relator.

*Dave Yost,* Attorney General, and *Tony H. Shang,* for respondent.

IN MANDAMUS

{¶ 10} Relator, Michael Shine, has filed this original action seeking a writ of mandamus ordering respondent, Ohio Department of Rehabilitation and Correction ("ODRC"), Annette Chambers-Smith, Director, to modify the date for relator's next parole hearing so that it is no more than ten years from the date he was first eligible for parole. ODRC has filed a motion to dismiss relator's petition for writ of mandamus. Relator has also filed a motion for leave to amend his petition to include "State ex rel." in the case caption.

Findings of Fact:

{¶ 11} 1. Relator is a prisoner incarcerated at Marion Correctional Institution ("MCI").

{¶ 12} 2. ODRC is a state governmental agency. The Ohio Adult Parole Authority ("OAPA") operates under ODRC.

{¶ 13} 3. Annette Chambers-Smith is the director of ODRC.

{¶ 14} 4. On July 15, 1998, relator was indicted in federal court ("federal case"). He subsequently plead guilty to two charges on April 28, 1999.

{¶ 15} 5. On February 19, 1999, relator was indicted in the Cuyahoga County Court of Common Pleas ("state case"). He subsequently pled guilty to two charges on May 10, 1999.

{¶ 16} 6. On July 28, 1999, relator was sentenced to 262 months of incarceration in the federal case.

{¶ 17} 7. On August 6, 1999, relator was sentenced to an aggregate term of incarceration of 15 years to life in the state case, to run concurrently with his sentence in the federal case.

{¶ 18} 8. Relator served his sentence in the federal case from September 17, 1999, to November 2, 2017, at which point he was transferred to the custody of ODRC.

{¶ 19} 9. On November 16 and December 27, 2017, relator received notices of his first parole hearing. The parole board indicated in a February 2018 decision and minutes document that relator's first statutory eligibility date was "February 2018 Actual." The February 2018 parole hearing was continued, and relator had his first parole hearing on May 17, 2018.

{¶ 20} 10. On May 17, 2018, the parole board denied relator parole and scheduled his next parole hearing for May 2028. The May 17, 2018, parole board decision and minutes document indicates that relator had served 228 months, or 19 years, at that time.

{¶ 21} 11. On April 16, 2021, relator filed a petition for writ of mandamus. In his petition, relator argued that: (1) the parole board has a clear legal duty to continue parole hearings for no more than 10 years; (2) the parole board effectively extended his term of incarceration by 14 years from the time he was first eligible until his second parole hearing

by failing to conduct his first parole hearing in a timely fashion in compliance with Ohio Adm.Code 5120:1-1-10; (3) the 14-year period between his first and second parole hearings is in excess of the maximum 10-year period permitted by Ohio Adm.Code 5120:1-1-10(B); and (4) he is entitled to an accelerated parole hearing date that is no more than 10 years from the date at which he originally became eligible for parole.

{¶ 22} 12. On May 18, 2021, ODRC filed a motion to dismiss relator's petition for writ of mandamus, pursuant to Civ.R. 12(B)(6), asserting the following two grounds for dismissal: (1) relator failed to bring his petition in the name of the state on the relation of the person applying, as required by R.C. 2731.04; and (2) relator was not entitled to an earlier parole hearing because he was in federal custody until November 2, 2017, and ODRC had no authority to determine relator's parole eligibility until he was transferred to the custody of ODRC at that time.

{¶ 23} 13. On June 2, 2021, relator filed a motion for leave to amend his complaint to include "State ex rel." in the case caption.

{¶ 24} 14. Also on June 2, 2021, relator filed a brief in response to ODRC's motion to dismiss.

{¶ 25} 15. On June 8, 2021, ODRC filed a reply to relator's brief in response to ODRC's motion to dismiss.

Conclusions of Law:

{¶ 26} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 27} A motion to dismiss pursuant to Civ.R. 12(B)(6) tests the sufficiency of the complaint. In order for a court to dismiss a case pursuant to Civ.R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. In construing a complaint upon a Civ.R. 12(B)(6) motion, a court must presume that all factual allegations in the complaint are true and make all

reasonable inferences in the plaintiff's favor. *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14.

{¶ 28} ODRC first asserts that relator's petition should be dismissed because relator did not follow R.C. 2731.04 when he failed to name the State of Ohio on the relation in his petition. R.C. 2731.04 provides that an "[a]pplication for the writ of mandamus must be * * * in the name of the state on the relation of the person applying." While it is true that relator did not name the State of Ohio on the relation in his petition, and such deficiency is grounds for dismissal, *see Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, ¶ 35-36, a relator may seek leave to amend the complaint to comply with R.C. 2731.04. *Id.* Here, relator has filed a motion for leave to amend his complaint to name the State of Ohio on the relation of relator. The magistrate grants relator's motion to amend the petition. Therefore, ODRC's motion to dismiss on this ground is denied.

{¶ 29} ODRC next argues that relator's petition must be dismissed because relator cannot show that he had a clear legal right to an earlier parole hearing in 2014 because he was in federal custody until November 2, 2017, and ODRC had no authority to determine relator's parole eligibility or provide him a parole-eligibility hearing until he was transferred to the custody of ODRC at that time. Thus, ODRC contends, relator cannot demonstrate he had a clear legal right to a first parole hearing by ODRC after he had served 15 years and was still in the custody of federal prison.

{¶ 30} Relator counters that Ohio Adm.Code 5120:1-1-10 requires that the initial parole hearing for an individual serving a sentence such as relator must be held on or about the date when the prisoner first becomes eligible pursuant to Ohio Adm.Code 5120:1-1-03(A). Relator contends that ODRC has effectively denied him of the May 1999 plea agreement that he entered into whereby he would be parole eligible in 15 years, or May 2014, by failing to conduct his first parole hearing in a timely fashion in compliance with Ohio Adm.Code 5120:1-1-10. Relator points out that ODRC did not consider his parole eligibility for his first hearing until February 2018, where it determined that his first statutory eligibility date was February 2018, and the parole eligibility hearing did not actually occur until May 17, 2018. Relator claims that ODRC's determination to extend his sentence by an additional 14 years from the date of his first eligibility was in violation of the statute.

{¶ 31} Ohio Adm.Code 5120:1-1-10 provides, in pertinent part:

(A) The initial hearing for each inmate serving an indeterminate sentence shall be held on or about the date when the prisoner first becomes eligible for parole pursuant to rule 5120:1-1-03 of the Administrative Code.

(B) In any case in which parole is denied at a inmate's regularly constituted parole hearing, the parole board shall:

(1) Set a projected release date in accordance with paragraph (D) of this rule; or

(2) Set the time for a subsequent hearing, which shall not be more than ten years after the date of the hearing.

{¶ 32} Relator's mandamus petition raises two related questions. First, pursuant to Ohio Adm.Code 5120:1-1-10, is a prisoner who is presently serving a term of incarceration in federal prison, which is running concurrent to a term of incarceration ordered in a state court, entitled to a parole-eligibility hearing on or about the date when the prisoner first becomes eligible for parole in the state court case? If not, pursuant to Ohio Adm.Code 5120:1-1-10, is a prisoner who was serving a term of incarceration in federal prison at the time he first became eligible for a parole related to a state conviction, and who is released from federal prison and subsequently denied parole eligibility at his first parole eligibility hearing, entitled to a subsequent parole eligibility hearing that is no later than ten years after the date when he first became eligible for parole?

{¶ 33} Unfortunately, neither relator nor ODRC cite any authority that answers either of the above questions. The magistrate also can find no authority that squarely answers the questions. However, there is some case law that tends to support ODRC's contention that it had no authority to determine relator's parole eligibility or provide a parole eligibility hearing until he was transferred from federal prison to the custody of ODRC. In a case concerning a delay in conducting a parole-revocation hearing, the court in *State ex rel. Glover v. May*, 5th Dist. No. 2020 CA 0028, 2020-Ohio-3353, held that because the prisoner was serving a sentence in Georgia while on parole for his Ohio sentence, he was not entitled to a revocation hearing until the OAPA took custody of him after he completed his Georgia sentence. *Id.* at ¶ 24, citing *State ex rel. Taylor v. Ohio*

*Adult Parole Auth.*, 66 Ohio St.3d 121, 125 (1993) (finding that neither due process of law nor R.C. 2967.15 or former Ohio Adm.Code 5120:1-1-19(A)'s "reasonable time" requirement compels a final revocation parole hearing while an alleged parole violator is imprisoned pending prosecution for, or after conviction of, another crime), and *State ex rel. Brantley v. Ghee*, 83 Ohio St.3d 521, 522 (1998) (finding that the OAPA has no legal duty to hold a final parole revocation hearing for the prisoner during the time he is incarcerated on new criminal charges).

{¶ 34}  In *State ex rel. Marsh v. Tibbals*, 149 Ohio St.3d 656, 2017-Ohio-829, which also concerns the timeliness of a parole-revocation hearing, the prisoner argued that the OAPA was obligated to hold a revocation hearing as soon as the federal prison agreed to make him available for the hearing by videoconferencing technology. The court concluded that, irrespective of the prisoner's request that the OAPA hold a revocation hearing by videoconference, the OAPA was under no duty to do so during his federal incarceration. The court explained that the OAPA's duty to hold a revocation hearing did not arise until the prisoner completed his federal sentence and federal authorities transferred him into state custody, and the availability of videoconferencing technology did not trigger the OAPA's duty to hold a revocation hearing. Therefore, the court concluded, because the prisoner was serving a sentence for federal convictions while on parole from his Ohio sentence, he was not entitled to a revocation hearing until the OAPA took custody of him after he completed his federal sentence.  *Id.* at ¶ 23-24.

{¶ 35} Although these cases do not arise from the same procedural or regulatory background as the present case, the magistrate finds the general principles discussed therein to be helpful in analyzing the present case. Applying the concepts from *Marsh* and *Glover* to the present case, because relator was serving a federal sentence at the time he would have been eligible for his initial parole-eligibility hearing for his state convictions, ODRC was under no duty to hold a parole hearing during his federal incarceration. ODRC's duty to hold his first parole hearing did not arise until relator completed his federal sentence, the federal authorities transferred him into state custody, and ODRC took custody of him.  *See, e.g. Marsh* and *Glover*. Therefore, lacking citation to any authority to the contrary, relator has failed to show a clear legal right to a parole hearing for his state sentence while serving his concurrent term of incarceration in federal prison

or a clear legal duty on the part of ODRC to provide such a hearing during his federal incarceration, pursuant to Ohio Adm.Code 5120:1-1-10.

{¶ 36} As for the second question raised by relator's petition—that after he was released from federal prison and denied parole at his first eligibility hearing, he was entitled to a subsequent parole eligibility hearing that was no later than 10 years after the date when he first became eligible for parole in May 2014—relator has also failed to show a clear legal right to such. Ohio Adm.Code 5120:1-1-10(B)(2) provides that in any case in which parole is denied at the inmate's regularly constituted parole hearing, the parole board shall set the time for a subsequent hearing, which shall not be more than 10 years after the date of the hearing. Here, ODRC denied relator parole at his initial parole hearing in May 2018, and set the time for a subsequent hearing in May 2028, consistent with the guidelines in Ohio Adm.Code 5120:1-1-10. In sum, although the magistrate appreciates the perceived unfairness about which relator complains, relator has failed to show he had a clear legal right to the requested relief or that ODRC had a clear legal duty to perform the requested relief, which is the standard in mandamus cases. The cited regulations do not provide the legal rights or duties relator urges, and there is no authority to support relator's contentions.

{¶ 37} Accordingly, it is the magistrate's decision that relator can show neither a clear legal right to the requested relief nor a clear legal duty on the part of ODRC to provide such relief. Therefore, the magistrate grants relator's motion for leave to amend his complaint and recommends that this court grant ODRC's motion to dismiss relator's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).