[Cite as *State ex rel. Cartwright v. Ohio Adult Parole Bd.*, 2022-Ohio-2934.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dana Cartwright, | : | |
| Relator, | : | No. 20AP-62 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Adult Parole Board, | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on August 23, 2022

**On brief:** *Dana Cartwright*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *George Horvath*, for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

McGRATH, J.

{¶ 1} On January 31, 2020, relator, Dana Cartwright, filed an original action in this court requesting a writ of mandamus ordering respondent, Ohio Adult Parole Board, to vacate the results of a previous parole revocation hearing that resulted in revocation of relator's parole and to grant him a new revocation hearing. Relator alternatively requested a writ ordering respondent to place him back on parole under the conditions governing his status prior to revocation. On February 28, 2020, respondent filed a motion to dismiss for failure to state a claim for relief under Civ.R. 12(B)(6), and for failure to comply with inmate procedural filing requirements under R.C. 2969.25(A) and (C).

{¶ 2}   In his complaint, relator raised two claims for relief.  First, relator asserted that respondent's decision to revoke his parole "is void and an abuse of discretion where the Relator was never given adequate notice of the alleged violation against him in violation of his substantive and absolute right to due process of law."  (Relator's Compl. at 3.) Second, relator asserted that respondent's decision to revoke his parole "was based upon insufficient evidence in violation of Relator's substantive and absolute right to procedural due process of law as guaranteed by the 14th Amendment to the U.S. Constitution as well as Article I, Section 16, Ohio Constitution."  *Id*. at 4.

{¶ 3}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision on July 24, 2020, granting respondent's motion to dismiss and denying the writ of mandamus.  On August 6, 2020, relator filed an objection to the magistrate's decision asserting the magistrate erred in concluding the complaint failed to state a claim upon which relief could be granted.

{¶ 4}   In *State ex rel. Cartwright v. Ohio Adult Parole Bd.*, 10th Dist. No. 20AP-62, 2021-Ohio-923, this court sustained relator's objection with respect to the magistrate's decision to dismiss the complaint for failure to state a claim for relief.  Specifically, while holding that relator admitted to the conduct charged in Count 1 that prompted the revocation hearing, this court further held, in construing the material allegations of the complaint as admitted (for purposes of Civ.R. 12(B)(6) analysis), it did not appear beyond doubt that relator could "prove no set of facts entitling him to recovery on the second claim in [his] original action that revocation of parole was based on insufficient evidence." *Id*. at ¶ 22. This court therefore remanded the matter to the magistrate for further evidentiary proceedings and a determination on the merits.

{¶ 5}   Following this court's remand, the parties filed cross-motions for summary judgment; the parties also submitted evidence to the magistrate, including an audio recording of the parole revocation proceedings.  By order entered on December 9, 2021, the magistrate denied the parties' cross-motions for summary judgment.

{¶ 6}   On April 21, 2022, the magistrate issued a new decision, including findings of fact and conclusions of law, appended hereto.  Based on this court's remand directive, the magistrate considered the sufficiency issue, i.e., whether the evidence considered by respondent supported "the alleged violations under the preponderance-of-the-evidence

standard applicable to parole revocation proceedings." (Apr. 21, 2022 Appended Mag.'s Decision at ¶ 49.) The magistrate, following a review of the audio recording of the revocation proceedings, concluded the evidence was sufficient to indicate that respondent considered the credibility of witnesses, and that it properly relied on such evidence to revoke relator's parole under a preponderance-of-the-evidence standard. The magistrate therefore recommended this court deny the requested writ.

{¶ 7} Relator has filed a pro se objection to the magistrate's decision in which he challenges the magistrate's sufficiency determination, and also challenges this court's prior determination as to his claim of lack of proper notice of the violation against him. With respect to the latter challenge, this court previously addressed and rejected relator's assertion he was unable to defend against the alleged violation because of inadequate notice. Specifically, this court noted that relator "upon receiving notice of the alleged violation in Count 1 * * * admitted the same," and we further observed that "one of the documents attached to relator's complaint indicates that when he acknowledged receipt of the notice, relator 'admit[ted] with mitigation' that he 'engaged or attempted to engage in sexual contact with [T.G.] without her consent.' " *Cartwright* at ¶ 20.

{¶ 8} Having previously addressed the merits of relator's claim regarding lack of adequate notice, we decline to revisit that claim now. In a somewhat related vein, relator asserts further error by this court in our remand decision, arguing that we "failed to consider whether the Respondent's Judgment is rendered VOID under the mandate of Ohio Revised Code Section 2901.20(A) when the Court should have."[1] (Relator's May 3, 2022 Obj. at 5.) Relator, however, did not raise any issue regarding the purported applicability of that statutory provision (to a rule of parole) either in his complaint or by way of argument before the magistrate (and/or objection to the magistrate's initial decision), nor would we find merit in the argument.

{¶ 9} With respect to the magistrate's sufficiency determination, we note the magistrate's findings of fact set forth in detail, based on the magistrate's review of the audio recording of the parole revocation hearing, a summary of the testimony and evidence presented during that hearing. The audio recording included testimony by parole officer

---

[1] R.C. 2901.20(A) states in part that "[e]very act enacted on or after the effective date of this section that creates a new criminal offense shall specify the degree of mental culpability required for commission of the offense."

(Colin Bittner), the alleged victim (T.G.), nursing aide (S.O.), two hospital police officers, and relator. The magistrate noted that respondent's hearing officer "heard testimony that relator, while he had not touched S.O., had caressed T.G.'s leg and touched her breast," and that relator's "statements of sexual interest in, and admiration for, both women, as recounted by the victims, support a finding that the touching was for the purpose of sexually arousing or gratifying either relator or the victim." The magistrate further determined the testimony "also makes clear that the touching was unwelcome," and that "T.G. repeatedly protested, rebuffed relator's advances, and specifically requested he desist." (Apr. 21, 2022 Appended Mag.'s Decision at ¶ 54.)

{¶ 10} In his objection, relator contends there are "questions in the behavior of the alleged victim," and that "[t]he conversation between her and [r]elator was private," and that it was "[h]er word against his word." (Relator's May 3, 2022 Obj. at 3.) Relator further suggests that "[i]f the situation became beyond what she wanted, she could have retreated to the Nursing Station." *Id.*

{¶ 11} Despite relator's efforts to attack the credibility of T.G., the record supports the magistrate's determination that there was sufficient evidence presented to indicate respondent considered the credibility of witnesses "and relied on that evidence to revoke parole under the preponderance of the evidence standard." (Apr. 21, 2022 Appended Mag.'s Decision at ¶ 54.) We further agree with the magistrate's determination that, based upon the hearing testimony and related documents, relator failed to establish a clear legal right to a new parole hearing or reinstatement of the prior terms of his parole.

{¶ 12} Upon review of the magistrate's decision and an independent review of the record, we find the magistrate has properly determined the relevant facts and applied the appropriate law. We therefore overrule relator's objection to the magistrate's decision and adopt that decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision and recommendation, we deny relator's request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

SADLER and BEATTY BLUNT, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dana Cartwright, | : | |
| Relator, | : | |
| v. | : | No. 20AP-62 |
| Ohio Adult Parole Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

## MAGISTRATE'S DECISION

### Rendered on April 21, 2022

*Dana Cartwright*, pro se.

*Dave Yost*, Attorney General, and *George Horvath*, for respondent.

## IN MANDAMUS

{¶ 13} Relator, Dana Cartwright, seeks a writ of mandamus ordering respondent, Ohio Adult Parole Board, to vacate the results of a previous revocation hearing that resulted in a revocation of parole for relator, and grant relator another parole revocation hearing. In the alternative, relator requests a writ ordering respondent to place relator back on parole on the conditions governing his status prior to revocation.

{¶ 14} The matter is before the magistrate on remand from a panel decision that sustained relator's objections to the magistrate's initial determination dismissing relator's complaint for failure to state a claim. The court's March 23, 2021 decision determined that, of relator's two complaints regarding respondent's proceedings in this matter, relator had received adequate notice of the alleged parole violations that led to the revocation hearing, but that it could not be determined based on the initial pleadings whether respondent's decision to revoke parole was based on insufficient evidence. The panel therefore

remanded the matter to the magistrate for further evidentiary proceedings and a determination on the merits.

Findings of Fact:

{¶ 15} 1. Relator filed his complaint in mandamus with this court on January 31, 2020.

{¶ 16} 2. At the time of filing, relator was incarcerated at the London Correctional Institution in London, Ohio.

{¶ 17} 3. Attached to relator's complaint is his affidavit of indigency and his statement of inmate account and other assets as required by R.C. 2969.25(C). Relator's complaint does not present separately the statement of prior civil actions required by R.C. 2969.25(A), but his affidavit of indigency does contain an averment that he has filed no such actions.

{¶ 18} 4. Relator's complaint avers that he was convicted in 1994 of murder after a jury trial in Montgomery County. He received a 15-year-to-life sentence with a 3-year firearm enhancement and an 18-month concurrent sentence for having a weapon while under disability.

{¶ 19} 5. Relator's complaint further avers that he served 25 years before he was granted parole on April 25, 2019, but that on June 7, 2019 his parole officer took him into custody based on reported parole violations. The violations were based on incidents in which relator was alleged to have engaged in non-consensual sexual contact with two female staff members at Miami Valley Hospital, where relator's mother was receiving care.

{¶ 20} 6. Based on the hospital staff allegations, relator's supervising parole officer furnished to relator a notice of violation setting forth two counts:

> You are alleged to have committed the following violations:
> 09/2017 Conditions
>
> RULE 1: I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities. * * *
>
> TO WIT: On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [T.G.] without her consent.
>
> * * *

> TO WIT: On or about 6/6/2019, in the vicinity of Dayton, OH, you engaged or attempted to engage in sexual contact with [S.O.] without her consent.

The notice form provides signature blocks for the offender to acknowledge receipt ("I have read (been read) and understand the foregoing") and for the supervising parole officer providing the notice. The signatures are both present in the copy provided by relator, although the signers each mistakenly signed in the space provided for the other, so that relator's signature appears in a block titled "Officer's Signature." The form also provides three options for the offender with corresponding initials blocks: "Admit," "Admit with Mitigation," and "Deny." Relator initialed the "Admit with Mitigation" block for count one, and the "Deny" block for count two.

{¶ 21} 7. The Adult Parole Authority produced a violation report considered by respondent:

> V. SUPERVISION ADJUSTMENT
>
> On 4/25/2019, the offender was released from Pickaway Correctional Institution, having served prison time since 11/19/1994 for a Murder conviction. The offender was released on five (5) years Parole. The offender's initial ORAS Risk level was Low and was supervised at Very High level of Supervision. The offender has the following Parole Board Special Conditions[:] Five years of supervision, very high supervision level, placement to be approved by the Board, no change of residence without prior approval of the Board, substance abuse screening and programming if indicated and case plan to be developed will be imposed.
>
> Prior to these alleged violations, the offender was compliant with supervision. The offender had been paroled roughly six (6) weeks, before being arrested by this officer on 6/7/19 for the current violations. No criminal charges were filed in this case. The offender was served with VSP paperwork on 6/14/19 and is currently being held at CRC awaiting his hearing scheduled for 7/8/19.
>
> VI. RECOMMENDATION:
>
> Due to the sexual nature of the violations on [T.G. and S.O.], the APA is respectfully recommending the offender have his Parole Supervision revoked and serve a term of incarceration.

{¶ 22} 8. Respondent conducted a hearing on July 8, 2019.  Respondent's hearing officer then issued a "Notice of Findings of Release Violation Hearing" on July 8, 2019:

> **I. This is to advise you that you were charged with the following release violation(s) as written in the Notice of Release Violation Hearing Form.**
>
> RULE 1 On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [T.G.] without her consent.
>
> RULE 1 On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [S.O.] without her consent.
>
> **II. Summary of evidence used in arriving at findings:**
>
> Your Hearing was held on Monday, July 8, 2019.
>
> You denied violating Ohio Parole Rule #1 (count 1) and Ohio Parole Rule # 1 (count 2). The Adult Parole Authority (APA) provided sufficient corroboration in the Violation Report Documentary Evidence submitted into the Record and Verbal Testimony presented during the Hearing for violation of Ohio Parole rule # 1 (count 1) the APA failed to provide sufficient corroboration in the Violation Report Documentary Evidence submitted into the Record and Verbal Testimony presented during the Hearing for violation of Ohio Parole Rule # 1 (count 2). Based on the Violation Report Documentary Evidence submitted into the Record and Verbal Testimony presented during the Hearing for violation of Ohio Parole Rule # 1 (count 1) and the record as a whole you are found Guilty of violating Ohio Parole Rule # 1 (count 1) by the Preponderance of Evidence Standard.

(Sic passim.) (Emphasis sic.)

{¶ 23} 9. Respondent's hearing officer issued a parole revocation order on July 8, 2019 for adoption by respondent:

> Whereas, Dana Cartwright No. A-299981, was serving a sentence of confinement in a state correctional institution operated by the Department of Rehabilitation and Correction and was released on Apr[il] 25, 2019 to the supervision of the Adult Parole Authority.  On Jul[y] 8, 2019, a hearing was held pursuant to ORC Section 2967.15, at which it was found that violations of the Conditions of Release had been committed. The Ohio Parole Board has carefully considered all of the

factors and circumstances brought to its attention. NOW, THEREFORE, by virtue of the authority vested in the Adult Parole Authority by law, the release is hereby revoked effective Jul[y] 8, 2019.

The violator is ordered returned as soon as practical to the appropriate state correctional institution.

The Hearing officer recommends to the Parole Board Chair/Designee that the violator serve 24 months of the sentence from the availability date before again becoming eligible for parole release consideration. This recommendation is subject to the approval and/or modification of the Parole Board Chair/Designee. The violator will receive final notification of the time to be served before again becoming eligible for release consideration after return to the state correctional institution. Final notification will be provided to the violator on the DRC form 3313 Sanction Receipt within 45 days of return.

{¶ 24} 10. By order dated July 16, 2019, respondent voted to modify the hearing officer's recommendation to increase the term before future parole eligibility from 24 to 48 months.

{¶ 25} 11. The magistrate entered a decision granting respondent's motion to dismiss this mandamus action for failure to state a claim on July 24, 2020.

{¶ 26} 12. Relator objected to the magistrate's decision dismissing his complaint, and on March 23, 2021, the court sustained relator's objections in part and remanded the matter to the magistrate. *State ex rel. Cartwright v. Ohio Adult Parole Bd.,* 10th Dist. No. 20AP-62, 2021-Ohio-923.

{¶ 27} 13. The parties duly submitted their evidence to the magistrate, including, as requested by the court's panel decision, an audio recording of revocation proceedings.

{¶ 28} 14. The magistrate denied the parties' cross-motions for summary judgment by order entered December 9, 2021.

{¶ 29} 15. The parties have fully briefed the matter, and relator has filed a notice with the court that he has been given a full opportunity to review the audio recording of his revocation hearing and has no further argument to add to his original brief.

{¶ 30} 16. The magistrate has reviewed the audio recording of revocation proceedings for relator. The following findings of fact summarize the audio record furnished by respondent.

{¶ 31} The hearing commences with a description of attendees, including relator and his counsel. In contrast to his response to the violation notice, relator denied both violation charges.

{¶ 32} Relator's assigned Ohio Adult Parole Authority parole officer, Colin Bittner, provided oral testimony regarding relator's conditions of supervision, notice of violations, and the circumstances under which the determination and investigations went forward. Officer Bittner testified that his investigation began with a call from Miami Valley Hospital indicating that relator had engaged in inappropriate conduct with female staff. Relator was then arrested at his residence, scheduled for a hearing, and served with notice of violations.

{¶ 33} Officer Bittner presented audio recordings of telephone calls made by relator from the detention facility after his arrest. One recording, time-stamped June 10, 2019, of a call between relator and his mother, contained audio of relator admitting to touching the calf of one of the nurses at the hospital. Relator then repeated the statement regarding that he had touched a "nurse," referred to the nurse as a "nobody, a nothing" and generally showed no remorse. (Audio Recording at 2:15.)

{¶ 34} Another call on June 14, 2019, is between relator and a male individual, described elsewhere in the record as relator's son. In this call, relator again admitted that he had touched the victim after she performed a blood draw on relator's mother, and appeared somewhat amused that this was considered in any way objectionable.

{¶ 35} In a third call recorded on June 15, 2019, relator spoke with a female friend or family member urging her to contact someone at the hospital, learn the victims' names, and influence the victims to withdraw or mitigate their allegations.

{¶ 36} Officer Bittner underwent cross-examination in which he admitted that both violations as charged alleged that relator had violated R.C. 2907.01(B), which defines sexual contact as touching an erogenous zone, but Officer Bittner felt that relator touching the victim's calf was enough given the victim's sense of violation.

{¶ 37} T.G., a phlebotomist at the hospital, testified and identified relator. T.G. stated that she was tending to a patient and attempting a difficult blood draw. Relator was keeping the patient company in the hospital room. Relator asked T.G. where she lived, in a manner that T.G. first found to be relatively innocuous and inconsequential small talk. Relator's questions became more probing and T.G. eventually "got a bad vibe." (Audio Recording at 24:10.) Relator eventually asked T.G. on a date and she told him she had a

boyfriend. Relator stated that he did not care about that. Relator then began rubbing T.G.'s leg as she attempted to perform her care duties for the patient, and did not desist after she protested. A nurse's aide entered to give the patient a bath, whereupon relator touched the aide's arm, again initially in a relatively innocuous manner typical of interactions between concerned family members and staff. Relator then proposed that the aide give him (relator) a bath as well. T.G. continued to attempt to draw the patient's blood when another nurse entered. T.G. explained to the nurse that relator was touching her leg despite her objections and protests, and the nurse warned relator not to touch T.G. again.

{¶ 38} When T.G. finished the blood draw, she left the room and conversed with a nurse supervisor at the nurse's station. Relator had also left the room and joined the conversation, declaring that he would do what he wanted to whomever he wanted because he could.

{¶ 39} T.G. concluded her testimony on direct examination by generally stating that she felt violated, that she had given relator a clear indication that his advances were unwelcome, and that relator had caressed her lower leg from ankle to calf three times after being told to stop.

{¶ 40} On cross-examination, T.G. stated that relator had not touched the nurse's aide who was working on the other side of the bed. Relator did, however, touch the side of T.G.'s breast during the conversation with the nurse supervisor at the nursing station. (Audio Recording at 35:10.)

{¶ 41} The hearing officer then heard the testimony of S.O., the nursing aide described in T.G.'s testimony. S.O. stated that she entered the hospital room, took the patient's vitals, and stood across the bed from T.G. Relator thereupon immediately began making inappropriate comments saying that S.O.'s tattoos were sexy and offering further opinions on all the pretty nurses in the hospital and inquiring about the potential for dates. S.O. heard T.G. repeatedly state "stop touching me," although S.O. could not see the contact complained of. At that point, S.O. left the room and returned with a nurse, and T.G. left the room with the nurse. S.O. found herself alone in the patient's room with relator and the patient. S.O. told them that her next step would be to wash the patient. Relator stated that S.O. could wash him anytime. S.O. ignored this comment and others like it that followed and eventually left the room.

{¶ 42} At that point, relator also left the room. S.O. observed that as relator walked by T.G. in the corridor, he grabbed T.G.'s breast. S.O. felt extremely uncomfortable and violated and was glad that relator had left the room and corridor and would have been fearful had he returned.

{¶ 43} On cross-examination, S.O. stated that relator had not touched her, and she had not been in a position to directly observe relator touching T.G.'s leg in the patient's room.

{¶ 44} The hearing officer next heard the testimony of a hospital police officer, Officer Spejna, who indicated that he was dispatched to the third floor on the night in question on a report of a visitor inappropriately touching hospital staff. He was ultimately unable to locate relator, but did obtain witness statements from T.G. and S.O. On his way to respond to the call, Officer Spejna felt that he had possibly crossed relator briefly in the hall. On making a report, T.G. seemed upset, confused, and stated that she had not been so treated by a patient or visitor before.

{¶ 45} Officer Soto, also of the hospital police force, testified with the same observations as Officer Spejna, other than he had not personally seen relator at the hospital.

{¶ 46} Relator personally testified that he had gone to visit his mother in the hospital on the night in question, had made small talk with T.G. and S.O. but nothing more. At one point, when T.G. was having difficulty finding a vein for the blood draw, he tapped her on the leg to encourage her to keep trying but did so without sexual intent. He approached her in the hall outside the nurse's station for the sole purpose of saying goodbye and thanking her for the care provided to his mother.

Discussion and Conclusions of Law:

{¶ 47} For this court to issue a writ of mandamus as a remedy addressing the actions of respondent, relator must establish by clear and convincing evidence that he has a clear legal right to the relief sought, that respondent has a clear legal duty to provide such relief, and that relator lacks an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 48} Respondent has broad discretion to impose conditions of release and impose release sanctions, which are designed to protect the public and promote successful reintegration into the community. R.C. 2967.03; Ohio Adm.Code 5120:1-1-17(A) and (B); *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.*, 81 Ohio St.3d 267, 268 (1998).

This discretion operates in parallel with the principle that there is no constitutional right to conditional release before the expiration of a valid sentence. *State ex rel. Hattie v. Goldhardt*, 69 Ohio St.3d 123, 125 (1994), citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979); *see also Brown v. Ohio Adult Parole Auth.*, 10th Dist. No. 09AP-797, 2010-Ohio-872, ¶ 8. Relator does not question here the validity of his original sentence.

{¶ 49} Relator claims that he was not afforded due process because he did not receive clear notice of the purported violations that formed the basis for the revocation of his parole, and also that there was insufficient evidence upon which respondent could have concluded that relator violated his conditions of parole. The notice issue was considered and rejected in the court's decision remanding the matter to the magistrate. The sufficiency issue will now be addressed to determine whether the evidence considered by respondent supports the alleged violations under the preponderance-of-the-evidence standard applicable to parole revocation proceedings. *See generally*, *State ex rel. Mango v. Ohio Dept. of Rehab. and Corr.*, 10th Dist. No. 18AP-945, 2021-Ohio-1314.

{¶ 50} Parole revocation proceedings and trial proceedings are distinct, and a parolee is not entitled to the same level of due process protection as a trial defendant. *See, e.g.*, *State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 16 (1991) ("The Parole Board may admit hearsay."); *Barnett v. Ohio Adult Parole Auth.*, 81 Ohio St.3d 385, 387 (1998) ("Parole and probation may be revoked even though criminal charges based on the same facts are dismissed, the defendant is acquitted, or the conviction is overturned, unless all factual support for the revocation is removed."); *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82 (1996), paragraph two of the syllabus ("Evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation and/or parole revocation proceedings."); *Wilson v. State*, 101 Ohio App.3d 487, 491 (1995) (no Eighth Amendment right to bail pending a parole revocation hearing); *Wilkins v. Wilkinson*, 157 Ohio App.3d 209, 2004-Ohio-2530 (10th Dist.)

{¶ 51} Nonetheless, although a parolee facing revocation does not have the same due process rights as does a trial defendant, the United States Supreme Court has established a minimum due process threshold for such proceedings. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court held that a parolee is entitled to certain due process protections at a parole revocation hearing. *Id.* at 488-90.

These include written notice of the claimed violations of parole, disclosure to the parolee of evidence against him, an opportunity to be heard in person before a neutral and detached hearing body, the right to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses under most conditions, and in conclusion a written statement by the factfinder relating the evidence relied on and reasons for revoking parole. *Wilkins* at ¶ 14, citing *Morrissey*.

{¶ 52} Relator asserts that respondent revoked his parole without evidence that relator had failed to comply with Rule 1 of his conditions of parole, which required him to obey federal, state, and local laws and ordinances. Relator argues that respondent received no evidence to support a finding that relator's conduct violated the statute referenced in his violation notice.

{¶ 53} The notice of violation alleged that relator had engaged in or attempted to engage in sexual contact with the two victims without their consent. The only statutory section cited is R.C. 2907.01(B), which is a definitional section: " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The actual offense in question here is stated under R.C. 2907.06(A), sexual imposition: "No person shall have *sexual contact* with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard." (Emphasis added.)

{¶ 54} This court has previously ruled that relator received notice of the nature of the claimed violations based upon the statement in his violation notices that relator had engaged in unwanted sexual contact. The hearing officer heard testimony that relator, while he had not touched S.O., had caressed T.G.'s leg and touched her breast. Relator's statements of sexual interest in, and admiration for, both women, as recounted by the victims, support a finding that the touching was for the purpose of sexually arousing or gratifying either relator or the victim. The testimony also makes clear that the touching was unwelcome. T.G. repeatedly protested, rebuffed relator's advances, and specifically requested he desist. The evidence is sufficient to indicate that respondent did consider the

credibility of witnesses and relied on that evidence to revoke parole under the preponderance of the evidence standard. *See, e.g., State ex rel. Jackson v. Wilkinson,* 10th Dist. No. 94APD12-1789, LEXIS 2577 (June 20, 1995). In addition, the parole board may consider sexual conduct when it revokes parole. Ohio Adm.Code 5120:1-1-18(A)(3) and (4).

{¶ 55} In sum, when considering the hearing testimony and related documents, relator has failed to establish a clear legal right to a new parole hearing or reinstatement of his prior terms of parole. It is therefore the decision and recommendation of the magistrate that the court deny the requested writ of mandamus.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).